UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TAMEKA JOHNSON, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) CAUSE NO. 2:11-CV-260 JD |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION & ORDER**

On September 26, 2012, this Court issued an opinion and order remanding Tameka Johnson's denied applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") to the Social Security Administration for further consideration. *Johnson v. Astrue*, 2012 WL 4471607 (N.D. Ind. Sept. 26, 2012). Johnson had raised a variety of issues in appealing the initial denial, which the Court re-classified into three general groups: (1) arguments alleging that the ALJ improperly ignored evidence of her knee pain at Steps Two and Three; (2) arguments alleging that the ALJ made mistakes in his Asthma Listing Analysis; and (3) arguments alleging that the ALJ made mistakes relative to his RFC analysis and his questioning of the Vocational Expert. The court found no error with respect to the first set of issues, but saw a need to remand to the ALJ with respect to the Asthma Listing Analysis because the ALJ did not explain why he rejected or failed to consider a piece of evidence which – if credible – would suggest that the claimant's impairment did, in fact, rise to listing-level severity. Having already found that a remand was warranted, the Court declined to address the third set of arguments.

On December 4, 2012, Johnson filed a motion for attorney fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, arguing that she is a prevailing party and that

the United States' position was not "substantially justified." [DE 33]. The Commissioner did not respond. Despite the long delay, Johnson's motion is timely, as it was filed within the window allotted by statute.[1] After considering the record, the court now grants the motion.

## DISCUSSION

In a civil action seeking judicial review of agency action, the court "shall" award fees and expenses to a prevailing party other than the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A motion for fees under subsection (d)(1)(A) must allege:

(1) that the party is a prevailing party and is eligible to receive an award under this subsection;

(2) that the position of the United States was not substantially justified; and

(3) the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

28 U.S.C. § 2412(d)(1)(B) (numbering added; reordered for organizational purposes). The amount sought by the fee applicant must be reasonable in order for an award to be granted. *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

There is no question that Johnson is a "prevailing party." A claimant who wins a sentence four remand, as Johnson did in this case, is a prevailing party for purposes of the EAJA. *Shalala v. Schaefer*, 509 U.S. 292, 300-01 (1993). The remaining issues are more complex, and the burden

---

[1] The EAJA overrides the 14-day limit contained in Fed. R. Civ. P. 54(d)(2)(B)(i) by providing that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses[.]" 28 U.S.C. § 2412(d)(1)(B). For purposes of subsection 2412(d), "'final judgment' means a judgment that is final and not appealable[.]" 28 U.S.C. § 2412(d)(2)(G); *see also Hoa Hong Van v. Barnhart*, 483 F.3d 600 (9th Cir. 2007) (explaining that the language of the EAJA means a judgment is "final" only when the time for taking an appeal expires) . Since the Commissioner is afforded sixty days to file a notice of appeal, *see* Fed. R. App. P. 4(a)(1)(B), the filing period for a motion for attorney fees in a case like this extends for ninety days after the district court judgment is entered.

shifts with each. The Commissioner bears the burden of proving that his position was "substantially justified" in law and fact at both the administrative and judicial stages of the proceeding. *Floroiu v. Gonzalez*, 498 F.3d 746, 748 (7th Cir. 2007). On the other hand, Johnson, as the fee applicant, has the burden of proving that the EAJA fees sought are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

*1. Whether the Position of the United States Was Substantially Justified*

It is the Commissioner's burden to show that his position was substantially justified, and the Commissioner has failed to respond to Johnson's motion. That failure to respond is not dispositive, however. The Court must engage in an independent review of the record to determine whether the Commissioner's position was justified. *Stephenson v. Astrue*, No. 3:07-CV-610, 2009 WL 2449224 at *3 (N.D.Ind. Aug. 5, 2009) (citing *Campbell v. Bowen*, 800 F.2d 1247, 1249 (4th Cir. 1986); *Nesvold v. Bowen*, 687 F.Supp. 443, 445 (N.D.Ind. 1988)). This is consistent with the language of 28 U.S.C. § 2412(d)(1)(B): "Whether or not the position of the United States was substantially justified *shall be determined on the basis of the record*[.]" (emphasis added).

Pursuant to 28 U.S.C. § 2412(d)(2)(D), "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based[.]" Accordingly, the Court may consider both the Commissioner's pre-litigation conduct and his litigation position. *Cunningham v. Barnhart*, 440 F.3d 862, 863 (7th Cir. 2006). The ALJ's decision constitutes part of the agency's pre-litigation conduct, and is therefore a part of the position of the United States. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The Court need only make one determination for the entire civil action regarding whether the Commissioner's position was substantially justified. *Id*. Thus, the Court may

3

award fees in cases "where the government's pre-litigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). To satisfy the "substantially justified" standard, a position must have "a reasonable basis in law and fact." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). In other words, the Commissioner must show that his position was grounded in (1) a reasonable basis in truth for the facts alleged, (2) a reasonable basis in law for the theory propounded, and (3) a reasonable connection between the facts alleged and the legal theory propounded. *Golembiewski*, 382 F.3d at 724.

Based on the specific facts of this case, the Court finds that the Commissioner's position – specifically, the ALJ's decision – was not substantially justified. As the Court noted in its previous opinion, the figures given throughout the medical record for the claimant's height varied widely. The ALJ resolved the discrepancy, however, by deciding that the claimant is 5'6". The claimant took a pulmonary function test – a "forced exhale" test designed to measure a potential asthmatic's lung capacity – and produced a measurement which, if credible, mandates a finding of disability under Listing 3.03. [R 1657]. Nonetheless, the ALJ accepted a medical expert's representation that the claimant did *not* meet the requirements of any Listed Impairment without even mentioning the stark medical evidence that she did. The ALJ stated that he found "no evidence suggesting a different conclusion [was] more appropriate," [DE 1-1 at 8] a statement which suggests to the Court that the pulmonary function could have been overlooked, rather than considered and disregarded or found incredible. In any case, the ALJ was under an obligation to address it. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995).

4

Johnson calls the ALJ's failure to consider the asthma evidence a "legal error." [DE 33 ¶ 7]. That might be accurate, particularly if the ALJ was fully aware of the contrary evidence and refused to consider and confront it, which would be a violation of settled legal requirements in this area. If, on the other hand, the ALJ simply overlooked the relevant piece of evidence, the Court might be more inclined to consider it a factual error. The Court cannot say on the present record which type of error occurred here, but the distinction does not make a difference – either can serve as the basis for a finding of no substantial justification. Given the straightforward nature of the evidence which was ignored, to overlook it would mean that the ALJ's statement about finding no evidence "suggesting a different conclusion" did not have a reasonable basis in truth. *Golembiewski*, 382 F.3d at 724. There *was* a piece of evidence in the record which was significant and which suggested a different conclusion. On the other hand, if the ALJ was indeed aware of the evidence, and of its potential significance, but for some reason felt it did not need to be addressed, then there was no reasonable basis in law for his decision to completely disregard it. *Id*. After all, it is well-settled that an ALJ must confront significant evidence contrary to his decision. *Indoranto*, 374 F.3d at 474; *Books*, 91 F.3d at 980; *Diaz*, 55 F.3d at 307-08. In short, the ALJ's failure to address the potentially dispositive pulmonary function test was not substantially justified, in one way or another.

2. *Whether the Fees Requested are Reasonable*

The burden rests squarely on Johnson to prove that her fee request is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The threshold statutory requirement is that the claimant inform the court of the amount sought, including "an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). Johnson included such

5

an itemized statement with her motion, listing time billed in one-tenth of an hour increments. [DE 33-3]. But she still must also show that the total requested is reasonable. Factors that the Court should consider in evaluating the reasonableness of a fee request are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3. Practically speaking, this Court asks two separate questions: (1) whether the amount of time an attorney spent on a case is reasonable; and (2) whether the amount that attorney charged for his or her time is reasonable and proper under the EAJA. In this case, the answer to both questions is yes.

     *a.*    *Johnson's Attorneys Spent a Reasonable Amount of Time on Her Case*

Johnson's attorneys spent 64.6 hours on her case, along with 2.0 hours of legal assistant time, for a total of 66.6 hours. That is slightly above the 40-60 hour range generally considered to be "normal" in a social security case. *See Schulten v. Astrue*, No. 08-CV-1181, 2010 WL 2135474 at *6 (N.D.Ill. May 28, 2010) (citing *Nickola v. Barnhart*, 2004 WL 2713075, *2 (W.D.Wis. Nov. 24, 2004) (roughly 60 hours of combined law clerk and attorney time it took to produce plaintiff's briefs was not excessive); *Holland v. Barnhart*, 2004 WL 419871, *2 (N.D.Ill. Feb. 3, 2004) (56.85 hours devoted to the preparation of "three briefs, totaling 48 pages" not unreasonable); *Anderson v. Barnhart*, 2006 WL 4673476, *5 (N.D.Ill. Feb. 9, 2006) (38.9 hours spent on brief and reply "unextraordinary"); *Cuevas v. Barnhart*, 2004 WL 3037939, *2 (N.D.Ill. Dec. 30, 2004) (56.5 hours of attorney work found reasonable); *Taylor v. Barnhart*, 2004 WL 1114783, *3 (N.D.Ill. May 14,

2004) (51 hours of attorney work found reasonable)). But it was not unreasonable for Johnson's attorneys to spend slightly more time than average on this case – in fact, the same was true for the Court. The administrative record, to put it bluntly, is enormous. It totals over 1700 pages. The claimant also came to court armed with several challenges to the ALJ's decision, and while no individual argument was particularly complex, virtually every step of the ALJ's analysis did have to be reviewed. It is not unheard of for a more difficult or voluminous case to take longer than the usual 40-60 hours. *See, e.g., Dewolf v. Astrue*, No. 11-CV-2043, 2012 WL 3260420 (N.D.Ill. Aug. 8, 2012) (79 billed hours recoverable); *Porter v. Barnhart*, No. 04-CV-6009, 2006 WL 1722377 (N.D.Ill. June 19, 2006) (awarding fees for 88.2 attorney hours, reduced from the 154.6 attorney hours originally requested). The slight deviation from the norm in this case is acceptable.

      *b.*      *The Rates Charged by Johnson's Attorneys are Reasonable*

The next question is whether the hourly rates charged by Johnson's attorneys – $184.13 for attorneys and $95.00 for paralegals – are reasonable.

> The Equal Access to Justice Act, which is the basis for awarding attorney's fees in this case, provides that the award "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living [since 1996, when the current version of the Act was passed] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

*Mathews-Sheets v. Astrue*, 653 F.3d 560, 562 (7th Cir. 2011) (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)). In *Mathews-Sheets*, Judge Posner wrote, "The Equal Access to Justice Act does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour." *Id*. "The $125 rate is a presumptive ceiling; to justify a higher rate the [claimant] must point to inflation or some other special factor." *Id*. In short, after *Mathews-Sheets*, showing the "market rate" might

not be enough in an EAJA case. This limits the value of the claimant's several attorney affidavits showing the prevailing market rate for similar services is comparable to, or higher than, what her attorneys are requesting. [DE 33-4; DE 33-5; DE 33-6; DE 33-7].

Those affidavits are still helpful, however, to deciding what Judge Posner did frame as being the dispositive question: "the [claimant's] lawyer will have to show that without a cost of living increase that would bring the fee award up to [the requested amount], a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case." *Mathews-Sheets*, 653 F.3d at 565. The affidavits come from qualified Chicago-area social security attorneys, each of whom states that they do not accept the non-inflation adjusted "ceiling" rate of $125.00 to work social security cases. Perhaps the two most powerful statements come from attorneys Frederick J. Daley, Jr., and David F. Traver:

> I am familiar with several attorneys who provide representation in federal court in social security appeals, **I know of no attorney who would do so in federal court for less than a fully-adjusted for inflation rate under the EAJA**. Indeed, I do not generally represent any clients for just an EAJA fee at $170.00 an hour, let alone $125. We evaluate cases based on risk/reward and opt for the meritorious ones that have past-due benefit potential to pay a fee under 42 U.S.C. § 406(b) well above any EAJA fee.

[DE 33-4 ¶ 10 (Daley) (emphasis added)].

> I am familiar with several attorneys who provide representation in federal court in social security appeals. **I know of no attorney who would do so in a federal court for less than a fully-adjusted for inflation rate under the EAJA**.

[DE 33-7 ¶ 8 (Traver) (emphasis added)]. These statements are evidence that competent lawyers in the relevant geographical area – that is, lawyers who are familiar with the law and procedures

surrounding social security administrative and judicial proceedings – would not handle a case like this for a non-inflation-adjusted EAJA rate.

More specific to the rate requested by counsel in this case, the claimant's attorneys attest that their practice costs have increased in specific, measurable ways since 1996 even apart from the increases summarized in general scales such as the Consumer Price Index ("CPI"). [DE 33 ¶ 8]. Their office rent has increased by at least 3% per year (not including moving to a larger space); the annual salary increases for firm personnel are approximately 5% for legal staff and 3-4% for administrative staff; health insurance costs have nearly doubled since the $125.00 figure was set in 1996 (due to increased premiums, not including increases in the amount of covered staff); continuing legal education has grown more expensive; and basic overhead costs are up. As a result of these regular increases in operating costs, the claimant's attorneys have raised their hourly rate in similar, but non-contingency, cases by 52% since 1996. [DE 33 ¶ 17]. They are asking for just a 40% increase here, which seems reasonable under the circumstances.

While Judge Posner did not specify, in *Mathews-Sheets*, exactly how a claimant's attorneys should show that a cost of living increase is warranted, the evidence in this case is sufficient. Courts have regularly accepted similar evidentiary showings in the wake of the *Mathews-Sheets* decision, even choosing to disregard, to some extent, the portions of that opinion which seem to embrace a very restrictive reading of the statute. *See, e.g., Shipley v. Astrue*, No. 1:10-CV-1311, 2012 WL 1898867 (S.D.Ind. May 23, 2012) (stating that the Southern District "does not read *Mathews–Sheets* to limit the availability of a fee higher than $125 based on an increase in the cost of living since 1996 only where the lawyer can prove that qualified attorneys would not otherwise be available" and accepting an increased rate based on the CPI and the attorney's increased rates in non-social

9

security cases); *Gonzalez v. Astrue*, No. 1:10-cv-899, 2012 WL 1633937 (S.D.Ind. May 9, 2012) (reflecting the same concerns about *Mathews-Sheets* and noting that the Production Price Index ("PPI") published by the Bureau of Labor and Statistics shows a 70% increase in costs for "Offices of Lawyers" between 1996 and 2012, finally awarding hourly rates of $173.72 and $180.23). Moreover, Johnson's attorneys themselves have already been awarded an hourly rate of $181.25 in a published decision from the Northern District of Illinois: *Claiborne ex rel. L.D. v. Astrue*, 877 F.Supp.2d 622 (N.D.Ill. 2012). Johnson's attorneys obtained that favorable result using exactly the same evidence they have provided here, *see* 877 F.Supp.2d at 627, and it was not the first time they had done so. *See Seabron v. Astrue*, No. 11-CV-1078, 2012 WL 1985681 (N.D.Ill. June 4, 2012); *Scott v. Astrue*, No. 08-CV-5882, 2012 WL 527523 (N.D.Ill. Feb. 16, 2012).

What has repeatedly satisfied the Northern District of Illinois satisfies this Court, as well. Half a year has passed since *Claiborne*, and the Court sees no reason to quibble with the small increase in the hourly attorney fee requested from $181.25 to $184.13, especially in the absence of any opposition from the Commissioner. In passing, the Court notes that at least one court has found that the requested paralegal rate – $95.00 per hour – was too high. *Porter*, 2006 WL 1722377 at *4. But the *Porter* decision was issued in 2006, and even then an $85.00 per hour rate was considered acceptable. *Sadler v. Barnhart*, 2004 WL 419908 at *2-3 (N.D.Ill. Feb. 25, 2004) (paralegal rates of $85 per hour). Today, nearly seven years down the line and in the absence of any government opposition, the Court finds the paralegal rate to be reasonable. Finally, no special circumstances have been put forward in this case which would make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

## CONCLUSION

In conclusion, Johnson's motion for attorney fees [DE 33] is **GRANTED**. So too is her request for the inclusion of $363.50 in costs, pursuant to 25 U.S.C. § 2412(a)(1). Combined with attorney fees of $12,084.79, that means Johnson is entitled to a total award of $12,448.29.

SO ORDERED.

ENTERED: January 30, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court